NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1125
(Serial No. 09/134,831)

IN RE RICHARD P. METTKE

Richard P. Mettke, of Reynoldsburg, Ohio, pro se.

Raymond T. Chen, Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, for the Director of the United States Patent and Trademark Office. With him on the brief were Shannon M. Hansen, and Thomas L. Stoll, Associate Solicitors. Of counsel was Sydney O. Johnson, Jr., Associate Solicitor.

Appealed from: United States Patent and Trademark Office
Board of Patent Appeals and Interferences

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1125
(Serial No. 09/134,831)

IN RE RICHARD P. METTKE

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

_____

DECIDED: June 25, 2009

_____

Before MICHEL, Chief Judge, NEWMAN and LOURIE, Circuit Judges.

NEWMAN, Circuit Judge.

Richard P. Mettke appeals the decision of the Board of Patent Appeals and Interferences affirming the examiner's rejection of the sole remaining claim (claim 6) in his application for reissue of U.S. Patent No. 5,602,905. Ex parte Mettke, Appeal 2008-0610 (B.P.A.I. Sept. 30, 2008). The Board concluded that claim 6 would have been obvious in light of any of several different combinations of references, and was therefore properly rejected under 35 U.S.C. §103(a). We affirm.

BACKGROUND

On January 23, 1995, Mr. Mettke applied for a patent directed to an "On-Line Communication Terminal/Apparatus." This application matured into the '905 patent, which issued on February 11, 1997 with five claims, four of which were for a "public on-line, pay-as-you-use communications terminal," and one for a method of using such a terminal. The specification describes the field of invention as a terminal "capable of interfacing with all major commercial on-line services," '905 patent, col. 1, lines 8-10, and emphasizes that the "pay-as-you-use" aspect is new, stating in the Description of Prior Art that "there is no one device/apparatus that allows a user, to access, on a pay-as-you-use basis, a commercial on-line service on an interactive basis," and that providing such a "pay-as-you-use" terminal would enable access to on-line services in "such diverse locations as airports, hotels, business centers, libraries, hospitals, shopping malls and other locations as appropriate," id. col. 1, lines 62-67. The Summary of the Invention lists several components that are combined to produce the communications terminal, and states that the invention allows users to "conveniently access commercial on-line services and the Internet at other locations other than from their fixed terminal at an office or home." Id. col. 2, lines 5-13.

The Detailed Description of the Invention proceeds by reference to two figures. Figure 1 is a high-level schematic block diagram showing that the terminal connects to a credit card processing service center and to an on-line service provider through a telephone line. Figure 2 illustrates the terminal itself, encased in a housing, comprising a monitor, a credit card reader, a keyboard, a printer, and a CPU. Details of how these elements interoperate to provide communications services are not provided, the

specification stating, "Interconnection and operatability of the components is not discussed in greater detail since the technology is well known in [the] prior art." Id. col. 3, lines 1-3.

On August 17, 1998, Mr. Mettke applied for reissue of the '905 patent pursuant to 35 U.S.C. §251, submitting with his application a declaration stating that he believed the '905 patent to be "wholly or partly inoperative or invalid by reason of me claiming less than I had the right to claim." He stated that he had inadvertently omitted claims that recited "accessing the Internet" generally, rather than merely accessing "commercial on-line services." He proposed to cancel claims 1-5 and to add new claims 6-9 directed to a communications terminal for accessing the Internet.

Three parties, including TouchNet Information Systems, Inc., filed protests to the reissue under 37 C.F.R. §1.291(a), and provided several references not previously considered during prosecution of the '905 patent. The examiner then rejected the new claims, and the Board affirmed the examiner's rejections and also entered a new ground of rejection for obviousness. Mr. Mettke filed a Request for Continued Examination, amending claim 6 and cancelling claims 7-9. Claim 6, as amended, was as follows:

> **6**. A public on-line Internet terminal comprising:
> a central processing unit (CPU);
> a video display monitor coupled to the CPU;
> a keyboard for providing user interface coupled to the CPU;
> a credit card reader swipe device coupled to the CPU for accepting payment by a user;
> means for accessing the Internet and allow for user interaction;
> software installed into the CPU to allow interface with the Internet and credit card service centers; and
> a printer coupled to the CPU.

The examiner maintained the rejection of claim 6, and the Board again affirmed. In a lengthy opinion, the Board concluded that claim 6 would have been obvious in light of five different combinations of references. Mr. Mettke appeals.

DISCUSSION

The question is whether the Board correctly concluded that, at the time Mr. Mettke filed his original application, the subject matter of claim 6 would have been obvious to a person of ordinary skill in the field of the invention. Obviousness is a legal conclusion based on underlying findings of fact. In re Thrift, 298 F.3d 1357, 1363 (Fed. Cir. 2002). The factual inquiries relevant to obviousness are set forth in Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966), and include (1) the scope and content of the prior art, (2) the differences between the prior art and the claims, (3) the level of ordinary skill in the relevant art, and (4) any objective indicia of non-obviousness such as commercial success, long felt need, and failure of others. We review the Board's factual findings for support by substantial evidence, and the Board's ultimate conclusion of obviousness without deference. In re Gartside, 203 F.3d 1305, 1316 (Fed. Cir. 2000).

A

Mr. Mettke criticizes the Board's finding that the field of endeavor is "pay-for-use public communication terminals," arguing that this field was too broad and led the Board to consider non-analogous art. Mr. Mettke argues that the term "communication" broadly sweeps in such fields as facsimile machines, telephones, televisions, cellular phones, and global positioning systems. He contends that the field of his reissue application is limited in claim 6 to an "Internet terminal." However, the specification

describes various communication media, including facsimile machines and email, as related to the invention. The Board recognized that the specific aspect to which claim 6 is directed is "providing access to the Internet," but found that the asserted prior art references are within the field of the invention or are analogous art. This finding is supported by substantial evidence.

B

The Board considered a combination of three references, two of which described protestor TouchNet's products, labeled "Exhibit E" and "Exhibit F" by the Board, plus an article by Rawn Shah titled "Suggestions for Information Kiosk Systems using the World Wide Web."

The Board found that reference Exhibit E describes a "free-standing pay-for-use TouchFax . . . public communications terminal (kiosk) for locations such as airports, hotels, truck stops, and supermarkets," that provides services including "phone, fax, computer, word processing, copying, and information services." Board op. at 15. The Board further found that the terminal comprises "a microprocessor, a touch-screen monitor, a data port for modem and laptop connections, a full-size keyboard, and a laser printer," and that the terminal accepts payment "using credit card or other magnetic card such as a telephone calling card." Id.

The Board found that Exhibit F describes a "Public Communications Terminal from TouchFax, in a stand-alone housing including a telephone, speaker, touch-screen monitor, a credit card reader for payment of services, a full-size keyboard for computer database access or word processing, an option panel, a flatbed scanner, a 386 CPU, and a laser printer," which provides services including "telephone, send or receive a fax,

photocopying, word processing and laser printing, and access to a growing number of information databases from Wall Street news to international sports scores." Id. Apart from Mr. Mettke's assertion that these references are not relevant because they do not focus on the Internet, he does not challenge the Board's description of the content of the references.

The Board found that Exhibits E and F disclose every element of claim 6 except the "means for accessing the Internet" and the "software . . . to allow interface with the internet and credit card service centers." However, the Board found that the communications software discussed in Exhibit F would have suggested the use of such software to communicate between the credit card reader device that is shown in Exhibit E, and a remote credit card service center.

The Board found that the Shah reference teaches the addition of the sole remaining element: "means for accessing the Internet." Shah describes "a kiosk based information system using the World Wide Web on the Internet as an interface." Board op. at 22 (citing Shah, abstract). The Board explained that the World Wide Web is not identical to the Internet, but is a distributed collection of linked documents and functionalities that is accessible using the Internet, while the Internet itself is a collection of interconnected computer networks operable via a set of common protocols. The Board found that, contrary to Mr. Mettke's argument, Shah explicitly addresses the advantages of using the Web as a means for providing information through a kiosk system, that "the Web is part of the Internet" and that it "allows users access to the many services on the Internet." Id. at 23 (citing Shah at 1-2). The Board found that Shah describes the Web as a distributed information system, and not merely as a

"browser" interface that can be used to present information on a terminal screen. The Board noted that Shah includes a discussion of kiosks that may store specific information locally, and discusses how "data managers may wish to restrict certain areas of their Webspace dependent upon their own criteria." Id. at 25 (quoting Shah at 5).

Mr. Mettke argues, as he did before the Board, that the Shah reference does not disclose "accessing the Internet" at all. He contends that the PTO "grossly misinterpret[ed] the Shah prior art," and that Shah "teaches away from accessing the Internet." Petr.'s Br. 6. He contends that Shah's discussion of the World Wide Web is limited to the use of a Web "browser" to access only limited information on a "standalone network," meaning one that is not connected to the larger Internet. The Board considered these contentions, and rejected them based on the text of the Shah reference, finding that Shah plainly discloses an information kiosk that uses the "World Wide Web on the Internet as an interface." Board op. at 22 (quoting Shah, abstract). Shah mentions access to the Internet expressly and repeatedly, as the Board explained. Substantial evidence supports the Board's reading of the content of the Shah reference and its application, as analogous art, to claim 6.

The Board concluded that the subject matter of claim 6 would have been obvious in view of the combination of Exhibit E, Exhibit F, and Shah. Mr. Mettke argues that the references do not contain any motivation to combine the "means for accessing the Internet" with the other elements of claim 6. Mr. Mettke contends the Board engaged in hindsight analysis, using his patent as a blueprint for the combination of elements from various sources. Mr. Mettke is correct that the selective hindsight combination of

2009-1125                                7

references that show various elements of the claim generally does not suffice to establish obviousness. See KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 418 (2007) ("[A] patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art.").

But the Board's analysis included more than a combination of disparate references disclosing different elements, for the Board explained why Shah teaches the very combination of elements that Mr. Mettke sought to claim. The Board found that Shah does not merely disclose "accessing the Internet" as a general matter; Shah expressly teaches Internet access in connection with information and communication kiosks—the kinds of public communication terminals described in Exhibits E and F. Shah provides explicit support for the Board's finding that a person of ordinary skill would have been motivated to modify existing information kiosks or terminals to provide access to the Internet. We affirm that the Board established a prima facie case of obviousness.

Mr. Mettke argues that the Board improperly dismissed his evidence of secondary (objective) considerations rebutting the prima facie case of obviousness. He states that the '905 patent has been cited as prior art in 93 patents, which he states indicates that his patent was a technology leader. He directs us to commentaries stating that the number of citations is a "metric of patent quality and thus of innovation." We draw no generalization about the significance of citations, for we agree with the Board that in this case, where every element of claim 6 is shown in the prior art, performing the same function as in the claim, along with a reference showing a reason

to combine the elements, this prima facie case of obviousness is not rebutted by the number of citations alone.

Mr. Mettke also states that "over 50% of all [now-existing] kiosks have all of the elements" of claim 6, suggesting commercial success. The Board found that Mr. Mettke failed to establish a "nexus" between this asserted wide use and his invention. See In re Paulsen, 30 F.3d 1475, 1482 (Fed. Cir. 1994) ("When a patentee offers objective evidence of nonobviousness, there must be a sufficient relationship between that evidence and the patented invention."). We note that when the commercially successful device is the claimed invention itself, there is a presumption of nexus. See Demaco Corp. v. F. Von Langsdorff Licensing Ltd., 851 F.2d 1387, 1392 (Fed. Cir. 1988). However, the Board found that Mr. Mettke failed to meet his burden because he has not shown that the alleged commercial success is due to the claimed invention. We conclude that the evidence of obviousness was not, in this case, rebutted by the asserted commercial success.

Taking all of the evidence in its entirety, see In re Rinehart, 531 F.2d 1048, 1052 (CCPA 1976), the Board's conclusion of obviousness based on the combination of Exhibit E, Exhibit F, and Shah was correct, in that it was based on findings supported by substantial evidence and not rebutted by objective evidence. The decision of the Board, denying patentability of reissue application claim 6, is affirmed.